UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL POWERS,                    :
                                   :   NO. 1:02-CV-00605
          Plaintiff,               :
                                   :
                                   :   **ORDER**
   v.                              :
                                   :
                                   :
HAMILTON COUNTY PUBLIC             :
DEFENDER COMMISSION,               :
   <u>et</u> <u>al</u>.,                       :
                                   :
          Defendants.              :

On August 21, 2002, Plaintiff Michael Powers ("Powers")
brought the present action on behalf of himself and others
similarly situated alleging that Defendants Hamilton County Public
Defender Commission, Office of the Public Defender of Hamilton
County, and Simon L. Leis, Jr. ("County Defendants"),
systematically failed to provide them with representation on the
issue of their ability to pay fines and/or costs assessed by
Hamilton County Municipal Court, resulting in their incarceration
despite their inability to pay those fines/costs (doc. 1). An
amended complaint was filed on June 4, 2003, adding defendants
Hamilton County, OH, and County Commissioners Phillip Heimlich,
Todd Portune, and John Dowlin,("Hamilton County Defendants") (doc.
10). All Defendants filed an answer to the amended complaint on
June 20, 2003 (doc. 11). Powers then filed a motion to certify
class action on August 5, 2003 (doc. 12). Defendants responded on

September 12, 2003 (doc. 15) and Powers replied on October 8, 2003 (doc. 20).  On November 5, 2003, Defendants filed a motion for summary judgment (doc. 23).  Powers filed a response on December 11, 2003 (doc. 28), requesting oral arguments, and Defendants replied on December 18, 2003 (doc. 29).  A hearing regarding the motions for class certification and summary judgment was held in before this Court on January 15, 2004.  Therefore the matters of summary judgment and class certification are ripe for decision. For the following reasons the Court grants in part and denies in part the motion for summary judgment (doc. 23) and grants Plaintiff's motion for class certification (doc. 12).

## I. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts relevant to the determination of the instant motion, as drawn from the Amended Complaint (doc. 10), may be summarized as follows.  On January 23, 2002, Powers, represented by the Hamilton County Public Defender's Office, pled no contest to a charge of reckless operation of a motor vehicle in Hamilton County Municipal Court Case No. CO/TRC/26368A.  He was found guilty of the charge and was sentenced to thirty days in the Hamilton County Justice Center, twenty-seven days of which were suspended, with the remaining three days to be served in a driver intervention program.  Additionally, Powers was fined $250 and court costs.  On March 22, 2002, he was re-arrested and charged with violating probation for non-payment of the fine, to which he pled no contest

and was found guilty (doc. 30). Powers's probation was
subsequently terminated and the original thirty day sentence was
imposed. Powers alleges that counsel was not provided by the
Hamilton County Public Defender Office to address the issue of
whether he was unable to pay the fine and costs because he was
indigent.[1] On April 22, 2002, a hearing was held on a motion to
mitigate filed by a private attorney. Judge Grant granted the
motion, imposing "credit for 10 days on fine, balance of sentence
and fine remitted."

At the time he was released, Powers had served at least
one day in the Hamilton County Jail for non-payment of a fine. He
alleges that his incarceration was improper because he was not
given a indigency hearing to determine his ability to pay his fine.
He avers that all County Defendants have a statutory duty under
Ohio Rev. Code § 2947.14[2] to request such a hearing and to ensure

---

[1] It is noted that County Defendants dispute several of
Powers's allegations in their Answer. However, because the facts
are to be taken in a light most favorable to Powers and
Defendants' motion for summary judgment presents legal reasons
that do not rest on any disputed fact, these discrepancies are
not germane to this discussion.

[2] Ohio Rev. Code § 2947.14 provides, in relevant part:
(A)  If a fine is imposed as a sentence or a part of a sentence,
the court or magistrate that imposed the fine may order that the
offender be committed to the jail or workhouse until the fine is
paid or secured to be paid, or the offender is otherwise legally
discharged, if the court or magistrate determines at a hearing
that the offender is able, at that time, to pay the fine but
refuses to do so. The hearing required by this section shall be
conducted at the time of sentencing.

that a person is not jailed for failure to pay fines/costs without inquiry into his indigency status. Powers further alleges that this is but an example of a general policy of the County Defendants to deprive indigent defendants of their rights. Powers contends that the statute creates a liberty interest to be free from incarceration for a non-willful failure to pay fines, and he therefore brings a civil rights action pursuant to 42 U.S.C. § 1983 alleging that he, and others similarly situated, were deprived of their rights under the Fifth, Sixth, and Fourteenth Amendments to

---

(B)  At the hearing, the offender has the right to be represented by counsel and to testify and present evidence as to the offender's ability to pay the fine. If a court or magistrate determines after considering the evidence presented by an offender, that the offender is able to pay a fine, the determination shall be supported by findings of fact set forth in a judgment entry that indicate the offender's income, assets, and debts, as presented by the offender, and the offender's ability to pay.

(C)  If the court or magistrate has found the offender able to pay a fine at a hearing conducted in compliance with divisions (A) and (B) of this section, and the offender fails to pay the fine, a warrant may be issued for the arrest of the offender. Any offender held in custody pursuant to such an arrest shall be entitled to a hearing on the first regularly scheduled court day following the date of arrest in order to inform the court or magistrate of any change of circumstances that has occurred since the time of sentencing and that affects the offender's ability to pay the fine. The right to the hearing on any change of circumstances may be waived by the offender....

(D)  No person shall be ordered to be committed to a jail or workhouse or otherwise be held in custody in satisfaction of a fine imposed as the whole or a part of a sentence except as provided in this section...

-4-

the United States Constitution.  He additionally raises a state law legal malpractice claim.

**II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**A. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam).  In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir.1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled.  First, "a party

seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879

F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir.1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir.1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H.

Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**B. Law and Discussion**

**1. Plaintiff's claim under Heck v. Humphrey.**

County Defendants first contend that Powers does not have a case or controversy to bring this claim, as required by Article III of the United States Constitution, because the instant action is barred by the Supreme Court decision in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court held that:

> when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the

-8-

> plaintiff, the action should be allowed to
> proceed.

512 U.S. 487 (emphasis added).  Therefore, because Plaintiff does not claim that his underlying sentence has been invalidated, this Court must decide whether a judgment in favor of Powers would "necessarily imply the invalidity of his conviction or sentence." Id.  To aid the district courts in making such a decision, the Supreme Court, in Spencer v. Kemna, 523 U.S. 1, 17 (1998) wrote "If, for example, petitioner were to seek damages 'for using the wrong procedures, not for reaching the wrong result,' and if that procedural defect did not 'necessarily imply the invalidity of' the revocation, then Heck would have no application [at] all." (citations omitted).[3]

The Sixth Circuit thoroughly explored this issue in Dotson v Wilkinson, 329 F.3d 463 (6th Cir. 2003).  There, the plaintiffs were prisoners challenging parole eligibility determinations and parole release determinations, and the success of either challenge would have only resulted in a new hearing.  The court found that:

> where a prisoner does not claim immediate
> entitlement to parole or seek a shorter

---

[3] As the Sixth Circuit did in Fox v. Van Oosterum, 176 F.3d. 342, FN 8 (6th Cir. 1999), this Court notes that five Justices in Spencer indicated they would not apply Heck to cases where the plaintiff is no longer in custody.  523 U.S. 1.  This Court does not need to reach that issue today because Heck does not apply in this case for other reasons.

> sentence but instead lodges a challenge to the
> procedures used during the parole process as
> generally improper or improper as applied in
> his case, and that challenge will at best
> result in a new discretionary hearing the
> outcome of which cannot be predicted, we hold
> such a challenge cognizable under section
> 1983.

Id. at 472.

Powers's three causes of action are based on his alleged deprivation of a hearing to determine his indigency status before he was incarcerated for non-payment of fines and costs. Like the plaintiffs in Dotson, Powers is seeking Section 1983 damages because of a defect in procedure, his denial of an indigency hearing, not a faulty conclusion. Id. A favorable outcome for Powers would, at best, result in a hearing on the issue of indigency at the time of his incarceration for non-payment of fines and costs, and would not necessarily imply the invalidity of his incarceration. Therefore, Heck is not applicable to this action and Powers's Section 1983 claims are cognizable. Thus, the County Defendants' motion for summary judgment is not proper on this basis.

### 2. Plaintiff's Indigency Status at Incarceration

County Defendants' second argument for summary judgment is that Powers was not indigent at the time of his sentencing on January 23, 2003, and therefore under Bearden v. Georgia, 461 U.S. 660 (1983), the trial court properly incarcerated Powers for

-10-

willful refusal to pay a criminal fine. Conversely, Powers contends in his response that he does not need to establish that he would have been indigent in order to establish a claim for violation of due process (doc. 28). County Defendants, in their reply, attempt to clarify their position, stating "the import of the County Defendants' argument is that no hearing is necessary once a defendant has refused to pay a criminal fine" (doc. 29).

County Defendants are correct in their understanding that under Bearden a trial court may impose incarceration when a defendant has wilfully refused to pay a criminal fine. 461 U.S. 672. However the Bearden Court also found that, "in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay." Id. Additionally, Ohio Revised Code § 2947.14 requires "prior to imprisonment for failure to pay a debt, that a hearing be held to determine whether the failure to pay was due to indigency or, instead, due to unwillingness to pay...this is precisely what the Fourteenth Amendment requires." Alkire v. Irving, 330 F.3d 802, 819 (6th Cir. 2003). Therefore, County Defendants' contention that an indigency hearing is not required is incorrect.

Additionally, County Defendants' assertion that Powers was not indigent at the time of his incarceration[4] and therefore

_____

[4] For example, County Defendants assert that "Plaintiff Powers was employed at the time of his sentencing" and "Plaintiff did not attempt to reschedule his payments or pay an amount less

was properly incarcerated under <u>Bearden</u>, is immaterial. "the administration of an unconstitutional policy by a public defender agency can be actionable under Section 1983 ." <u>Fuentes v. Shevin</u>, 407 U.S. 67, 87 (1972). Powers's ability to pay his fine at the time of his incarceration is not at issue here. Powers's contention, instead, is that he was not given an indigency hearing before he was incarcerated for failure to pay a fine. Therefore, summary judgment is also not proper on this basis.

### 3. Failure to Establish a Policy, Custom, or Practice

County Defendants' also contend that summary judgment is proper because Powers has failed to support allegations of a policy, custom, or practice to deprive defendants of their constitutional rights. To support his Section 1983 claim, Powers must be able to a) identify a policy, b) connect the policy to the County Defendants, and c) show that the particular injury was incurred because of the furtherance of that policy. <u>Jarvis v. Marcum</u>, 77 Fed. Appx. 308, 310 (6th Cir. 2003). Therefore, the Court must look at the evidence produced by Powers to show that it was a policy of Defendants to not request an indigency hearing when a client was facing incarceration for failure to pay fines or court costs.

As evidence of such a policy, Powers first points to the statutory duties of the Public Defender found in Ohio Rev. Code §

_____

than the balance owed" (doc. 23).

-12-

120.16, which requires a county public defender to provide legal representation to indigent adults at every stage of the proceedings. He claims that the County Defendants do not contest the fact that they have this duty to provide legal services in disputed cases of probation violation, or that they appear at arraignments. Powers further alleges that it is undisputed that staff members of the Public Defender never ask for an indigency hearing before a probation violator is incarcerated for fines. To prove this point he has produced seven sample transcripts where no hearing request was made, and judges' sheets which contain no notation that a request for an indigency hearing or findings was denied. Powers claims that because County Defendants have not produced any evidence showing that indigency hearings are ever requested, the Court must come to the conclusion that this is a widespread practice. Powers points to <u>City of St. Louis v. Praprotinik</u>, 485 U.S. 112, 127 (1988), which recognized that "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970)).

Taking all factual inferences in favor of the non-moving party, as the Court is required to do in considering a motion for summary judgment, it is clear to the Court that the Public Defender

Commission and the Hamilton County Public Defender had a well-settled custom or policy of not asking for an indigency hearing before a probationer is incarcerated for failure to pay a fine. Powers has produced seven sample transcripts where no hearing request was made, and judges' sheets which contain no notation that a request for an indigency hearing or findings was denied. Defendants have not produced any evidence to the contrary, and the Court can only conclude that the Commission and Public Defender had a policy under the meaning of Section 1983, under which indigent violators were incarcerated due to unpaid fines. City of St. Louis v. Praprotinik, 485 U.S. 112, 127 (1988). Summary Judgment is therefore not appropriate as to the Hamilton County Public Defender Commission and the Hamilton County Public Defender.

However, the Court finds that under the same analysis the facts of this case indicate the Commissioners and the County are too many steps removed from the challenged policy of non-inquiry to be liable for it. Powers alleges that Defendants Hamilton County and the Hamilton County Commissioners Phillip Heimlich, Todd Portune, and John Dowlin are "responsible for the policy of Hamilton County as established by such policymakers as the Presiding Judge of the Hamilton County Municipal Court" (doc. 10). However, to state a 42 U.S.C. § 1983 claim, a plaintiff must prove the deprivation of a right secured under the Constitution or federal law, and that this deprivation was caused by a person

-14-

acting under the color of state law.  Brock v. McWherter, 94 F.3d 242, 244 (6th Cir. 1996) (emphasis added).  A local governing body, such as Hamilton County or the Hamilton County Commissioners, cannot be liable for a Section 1983 claim on a *respondeat superior* theory.  Monell v. Dep't of Social Servs. of New York City, 436 U.S. 658, 691 (1978). The Monell court further explained that "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Id.  Therefore, these particular County Defendants could only be liable in a § 1983 action if it is shown that the violation alleged resulted from policies or customs that they created or were created by an entity or person they control. Id.

Powers makes no allegation that Hamilton County and the Hamilton County Commissioners were directly responsible for the deprivation of his constitutional rights, so the Court must look for evidence that these Defendants had real control over the decisions or policies of the Hamilton County Municipal Court.  This issue was specifically addressed by the Northern District of Ohio, on remand from the Sixth Circuit in Alkire v. Irving, 2003 U.S. Dist. LEXIS 17856 (2003).  There, the court held that Holmes County was not liable for the actions of a judge in the Holmes County Court because there was no evidence that the County had any control

-15-

over the judge's actions, despite the County's role as funder for the Court. Id. at 15-16.  The Sixth Circuit found it particularly important that the Holmes County Court was created by Ohio statute, not the County, and that the County had no power to "expand or decrease the jurisdiction of the County Court; it had no authority over the decision-making of the Court; it does not hire the County Court judges, nor can it terminate their employment." Id.  The relationship between the Hamilton County Municipal Court and the Hamilton County Commissioners/Hamilton County mirrors that of the Holmes County Court's relationship with Holmes County[5].  Any policy of the Hamilton County Municipal Court cannot be attributed to Hamilton County or the Hamilton County Commissioners.

Therefore, because Powers has failed to satisfy the requirements of Monell as to Defendant Commissioners of Hamilton County Phillip Heimlich, Todd Portune and John Dowlin, and Defendant Hamilton County, Ohio, summary judgment is granted for these Defendants.

The Court need not analyze whether Defendant Sheriff Leis had a policy of incarcerating defendants for fines despite knowledge of the unconstitutionality of the practice, because, as

---

[5] Municipal Courts are established by the Ohio Revised Code § 1901.01.  The jurisdiction of the Hamilton County Municipal Court's jurisdiction is set forth in § 1901.02 of the Ohio Revised Code.  The term limits and election procedures of judges are controlled by Ohio Revised Code § 1901.06.  The removal of municipal judges are mandated by Ohio Revised Code §§ 3.07-3.10.

explained in more detail directly below, the Court finds Leis had no duty to second-guess a trial judge's order.

### 4.  Defendants Claim No Duty of Inquiry on Their Part

County Defendants contend summary judgment is proper because they "were under no obligation or duty to conduct an independent assessment of Plaintiff Powers's ability or desire to pay a fine" (doc. 23). County Defendants instead repeatedly claim that it is the trial court's duty to make that assessment and to appoint counsel if a plaintiff desires representation. Although County Defendants are seemingly correct in this claim, the duty of the trial court is not at issue here. Powers's claims arise from the actions of the Public Defender and the Sheriff, which he alleges were the result of a policy adopted by all County Defendants. Any obligation the trial court may have in assessing a defendant's indigency does not necessarily absolve County Defendants of their responsibilities.

Here, as County Defendants admit, Powers was represented by the Hamilton County Public Defender's Office at both his sentencing on January 23, 2002 and at the probation termination on March 23, 2002. However, the record reflects no time when either of the Public Defenders representing Powers raised the question of his ability to pay fines or costs as an issue in relation to his incarceration. The record likewise reflects no inquiry by Defendant Leis into whether Powers was afforded an indigency

-17-

hearing before incarcerating him. This Court must therefore determine the extent of the County Defendants' responsibilities.

As stated above, the Fourteenth Amendment of the Constitution and Ohio Revised Code § 2947.14 require that a hearing be held to "determine whether failure to pay was due to indigency or, instead, due to unwillingness to pay." Alkire, 330 F.3d 819. A public defender is obligated under Ohio Revised Code § 120.16 to "provide legal representation to indigent adults and juveniles who are charged with the commission of an offense or act that is a violation of a state statute and for which the penalty or any possible adjudication includes the potential loss of liberty and in post-conviction proceedings as defined in this section." Further, they must "provide the legal representation...at every stage of the proceedings following arrest, detention, service of summons, or indictment." Id. It follows that the Public Defender did have a duty to represent Powers on the issue of indigency before his incarceration for failure to pay fines or costs. Summary judgment is not proper for Defendants Hamilton County Public Defender Commission and Office of the Public Defender of Hamilton County on this ground.

This is not the case, however, with Defendant Leis, the Hamilton County Sheriff. While Ohio Revised Code § 2947.14 mandates a hearing, it creates no duty for a Sheriff to make any determination on a defendant's ability to pay a fine or costs. The

-18-

Sheriff instead has a duty, under Ohio Revised Code § 311.07(A), to "execute all warrants, writs, and other process directed to the sheriff by any proper and lawful authority of this state."  There is no evidence showing that the order to incarcerate Powers was not directed to Defendant Leis by a proper or lawful authority.  Therefore, Defendant Leis had no legal obligation to inquire into Powers's indigency status.

Powers suggests that the Sixth Circuit's holding in Denton v. Bedinghaus, 40 Fed. Appx. 974, 2002 WL 1611472 (6th Cir. 2002), precludes this finding.  However, what the court in Denton found was that county employees are not entitled to quasi-judicial immunity when they are being sued in their official capacity.  Id. at *979.  That case does not apply to this issue.  The question raised here is not whether Defendant Leis is being protected by some immunity, but rather whether he had a duty to independently inquire into Powers's indigency before incarcerating him.  This Court holds that he did not.  Thus, summary judgment is granted for Defendant Leis.

### 5. Defendants Hamilton County Public Defender and Hamilton County Public Defender Commission as State Actors

County Defendants further assert that summary judgment is proper for the claims against Defendants Office of the Hamilton County Public Defender and Hamilton County Public Defender Commission for two reasons.  First, they claim that these

-19-

Defendants do not act under the color of state law as contemplated by 42 U.S.C. § 1983. Secondly, they aver that these Defendants were merely acting in an administrative role and did not form an attorney-client relationship with Powers, so no malpractice could have occurred. Plaintiff responds that under <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981), the administration of an unconstitutional policy by a public defender agency can be actionable under Section 1983 (docs. 28 & 31)(also citing <u>Miranda v. Clark County</u>, 319 F.3d 465, 469-70 (9th Cir. 2003) in which the head of a public defender office qualified as a state actor when creating and implementing a policy concerning public defender staff attorneys.) In such an instance, Plaintiff argues, the state-actor issue is eliminated (<u>Id</u>.). Plaintiff further states that Defendant "flatly admits there is no attorney client relationship between Defendant Hamilton County Public Defender Commission or Defendant Hamilton County Public Defender and Plaintiff" (<u>Id</u>.).

Defendants reply that Plaintiff has conceded there is no attorney-client relationship between Powers and the Public Defender or the Commission in an attempt to bolster his policy and practice theory (doc. 29). Defendants reiterate their position that only the Court is required to inquire into the reasons for an individual's failure to pay a fine or costs (<u>Id</u>.).

The Court finds Plaintiff's argument under <u>Polk</u> well-taken and does not find summary judgment appropriate as to the

Public Defender and the Public Defender Commission under Defendants' theory. The Court is satisfied that the administration of an unconstitutional policy by a public defender agency can be actionable under Section 1983. However, it appears clear that both parties are in agreement there was no attorney-client relationship between these Defendants and Plaintiff, so with this fact established, there is no basis for a legal malpractice claim against these Defendants. Accordingly, the Court grants summary judgment to Defendants on Plaintiff's malpractice theory.

### 6. Defendants' Remaining Theories

Defendants raise three remaining theories. The Court need not reach Defendants' Eleventh Amendment immunity argument as to Defendant Leis, as the Sheriff has been dismissed from this case on other grounds. Defendants further invoke the Rooker-Feldman doctrine which prohibits a federal court from reviewing a state court judicial decision (doc. 29). Defendants err, however, as the court is not reviewing the state court judicial decision in this matter, but is rather reviewing a custom and policy of the Public Defender Office and the Public Defender Commission of failing to request indigency hearings. Hood v. Keller, 341 F.3d 593, 598 (6th Cir. 2003). Finally, Defendants argue that the Younger abstention doctrine is applicable to this case so long as Plaintiff has the opportunity to raise his issue on appeal (doc. 29). As indicated above, the Court finds this case is about a defect in procedure and

not about a claim that the underlying sentence has been or should be invalidated.  Plaintiff asks for no injunction of a state court proceeding.  Therefore, <u>Younger</u> abstention is inapplicable.

Having conducted the above analysis, the only remaining Defendants in this case are the Hamilton County Public Defender and the Hamilton County Public Defender Commission, and the remaining claims are those pursuant to Section 1983 for violation of Fifth, Sixth, and Fourteenth Amendment rights.  Having established that these Defendants and claims withstand Defendants' summary judgment motion, the Court proceeds to Plaintiff's motion for class certification (doc. 12).

## III.  PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff moves the Court pursuant to Fed. R. Civ. P. 23b(b) and Local Rule 23.2 for certification of the following class:

> All persons who, without an indigency hearing, have been incarcerated in a Hamilton County correctional facility from August 21, 2000 to present, as a result of the nonpayment of a fine and or costs, including persons who violated probation following a "stay to pay sentence" (docs. 12 & 32).

Plaintiff proffers Exhibit C, a document prepared by the Sheriff's office personnel entitled "Charges with Guilty Dispositions-Fines Only" (<u>Id</u>.).  Exhibit C consists of over 1,311 entries of fines being served by about 1,000 persons during the two year time period starting in August 2000 (<u>Id</u>.).  This Exhibit shows

that nearly 600 of the fines being served were for less than $100.00, some 300 individuals served time for fines of less than $50.00, and that nearly 100 fines being served were for amounts less than $20.00 (Id.).  Plaintiff further provides the evidence of journal entries from Hamilton County Municipal Court showing how persons are typically committed on fines, and showing that some judges have a stamp reading "commit on fines" (Id.).  The practice of incarcerating indigents has persisted for years: Plaintiff proffers a memorandum on the subject from the Standing Criminal Committee, chaired by Judge Timothy Hogan on June 24, 1982 (Id.).  At such time, the Committee instructed the court administrator to "draft a procedure to eliminate the problem" (Id.).  Plaintiff argues that it may be fairly presumed that where over 600 persons were incarcerated on fines less than $100.00, such persons were indigent and unable to pay the fine (Id.).

Defendants oppose both Plaintiff's motion and Plaintiff's class definition, arguing that his definition is unfairly expansive, as the original definition applied to "all indigent persons" (doc. 12) where the clarified definition (doc. 32) applies to "all persons who without an indigency hearing have been incarcerated" (doc. 33).  The Court finds Defendants' objection to the class definition lacking in merit.  If anything, a class definition adding "no indigency hearing" is narrower than a class definition without such a constrictive clause.  The original

-23-

definition would have included those who had received an indigency hearing, and obviously such a definition is overbroad in the context of the present lawsuit which challenges the lack of such a hearing.  Moreover, Defendants have in no way been prejudiced by this modification of the class definition, as they have had plenty of time to file any subsequent briefing on the issue.

Defendants oppose Plaintiff's motion arguing (1) class certification is inappropriate because the named Plaintiff does not have a case or controversy before the Court, (2) Plaintiff's class is not maintainable solely by its designation as such through conclusory presumptions, and (3) Plaintiff's alleged class does not meet the requirements of Fed. R. Civ. P. 23 (doc. 15).  Defendants' first argument lacks merit, as explained in Section II.B.1 above. The remaining two arguments will be addressed in the Court's analysis below.

## A.  Applicable Legal Standard

The district court has broad discretion in deciding whether to certify a class.  Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981).  A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met.  General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982).  Maintainability as a class action may be determined by the pleadings, although it may be necessary for the court to probe behind the pleadings to ensure that the

prerequisites of Rule 23 have been met.  Id. at 160.

The party seeking to utilize the class action device bears the burden of proof.  Senter v. General Motors Corp., 532 F.2d 511, 522 (6th Cir. 1976).  In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).  Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b).  Id.  In the case at hand, Plaintiff posits that he has met the requirements under the subcategory of Rule 23(b)(3).

## I.  Requirements of Federal Rule of Civil Procedure 23(a)

In order to proceed as a class action, the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.

-25-

## A. Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1991); see also Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. Senter, 532 F.2d at 523. Instead, the court must examine the specific facts of each case. General Tel. Co. of Northwest, Inc. v. EEOC, 446 U.S. 318, 330 (1980). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." Senter, 532 F.2d at 523. This Court, in Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506 (S.D. Ohio 1985) found that as few as twenty-three class members could satisfy the requisite numerosity. Id. at 508 ("Paraphrasing another district court's view of the first requirement of the rule, while 23 may not be a large number when compared to other classes that have been certified, it is a large

-26-

number when compared to a single unit; there is no reason to encumber the judicial system with 23 consolidated lawsuits when one will do.")(citing Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452 (E.D.Pa. 1968)).

Plaintiff contends that there were 351 persons who had fines of $50 or less, and a total of over 1,000 persons who served time for fines only of various amounts (doc. 29). Plaintiff argues that these numbers exceed the range where joinder of all members would be practicable, citing Richter v. Bowen, 669 F. Supp 275, 281 n. 4 (N.D. Iowa 1987)(rule of thumb that a class of over forty persons is "sufficiently numerous for Rule 23 purposes")(Id.). Defendants argue that Plaintiff may not maintain a class action through presumptive or conclusory allegations, and that Plaintiff only presumes that his putative class members were indigent and unable to pay a fine, and presumes that only an extreme minority would choose incarceration rather than pay a $100.00 fine (Id.).

The Court may consider reasonable inferences drawn from facts before it in making the numerosity determination. In this case it is a reasonable inference that a significant number of the one thousand people incarcerated "on fines" were incarcerated, like Plaintiff, without an inquiry into whether they were indigent. A review of the seven trial transcripts filed by Plaintiff (doc. 22) suggests a pattern exists, and the affidavit of John Weber shows that only a partial review of court records reveals 32 cases of

-27-

incarcerants committed on fines with no record of an indigency finding (doc. 21). The Court agrees that an extrapolation of the results of John Weber's review of court records reasonably indicates that nearly 200 persons were incarcerated on fines without an indigency hearing. For purposes of its numerosity analysis, the Court finds credible the proposition that an adequate number of indigent people were incarcerated to render joinder impracticable. The numerosity requirement is met in this case.

### B. Rule 23(a)(2): Commonality

In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." Day, 144 F.R.D. at 333 (quoting Sweet v. General Tire & Rubber Co., 74 F.R.D. 333, 335 (N.D. Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative. 1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 3.10 at 3-50 (3d ed. 1992). There need be only a single question of law or fact common to all members of the class. Id. "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical

Corp., 855 F.2d 1188, 1197 (6th Cir. 1988).

Defendants argue that Plaintiff fails to establish commonality as there are factual distinctions among the putative class members that Plaintiff ignores in presuming all putative class members were not awarded indigency hearings, were in fact indigent, did not freely elect incarceration, and were not represented by counsel (doc. 15). Plaintiff contends that under Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1992) this requirement is satisfied "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation" (doc. 20). Plaintiff argues the commonality requirement is easily met as the focus of each putative class member's cause of action is the policy of not informing class members of their right to an indigency hearing, not making sure they are protected in court from being incarcerated for fines they cannot pay, and in fact incarcerating them for those fines (Id.). The Court finds Plaintiff's position well taken; Plaintiff has established commonality.

### C.    Rule 23(a)(3): Typicality

Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. Senter, 532

-29-

F.2d at 525 n.31.   The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members.  1 Newberg, <u>supra</u>, § 3.13, at 3-75.  "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  Id. at 3-76.

This analysis is necessarily intertwined with the analysis of commonality.  The Court finds that both Plaintiff and some nearly 200 other individuals served time in jail on fines without an indigency hearing.   The Court finds well-taken Plaintiff's position that his claims are precisely the same as those of the putative class members.  As such, the Court finds Plaintiff's interests to be aligned with those of the represented group, and that his claims meet the typicality requirement of Rule 23(a)(3).   This leads to the final prerequisite of class certification, adequacy.

### D.   Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).   There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear

that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 525; Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement.

Defendants take no issue with the adequacy requirement. The Court finds that Plaintiff has common interests with the unnamed members of the class, and has confidence that his counsel are eminently qualified to vigorously prosecute the interests of the class. Therefore, the Court concludes that the prerequisites to Rule 23 have been met in this case. This does not end the Court's analysis, however. Once it is determined that the prerequisites to Rule 23 have been met, the Court must determine if the case is of a type which can be certified.

## II.  The Requirements Federal Rule of Civil Procedure 23(b)(3).

Rule 23(b)(3) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and

efficient adjudication of controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The County does not mention any problem under Rule 23(b)(3) concerning the predomination of common questions of law and fact.  The Court similarly, sees no problem.  As discussed above, the Hamilton County Public Defender's policy of not asking for an indigency hearing is common to the class as a whole.  When weighed, on balance, the Court concludes that this issue predominates over any individual issues which might arise.  A class action would be superior to the prosecution of separate actions. Accordingly, the Court concludes that a class action is the proper vehicle for this lawsuit.

IV. **CONCLUSION**

For the reasons indicated herein, the Court finds Defendants' Motion for Summary Judgment well taken as to Defendant County Commissioners, Defendant Hamilton County, Defendant Sheriff Leis, and as to Plaintiff's malpractice claim.  However,

-32-

Plaintiff's remaining Section 1983 claims as to the Hamilton County Public Defender and the Hamilton County Public Defender Commission survive Defendants' Motion.  The Court further finds Plaintiff's motion for class certification well-taken.

Accordingly, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment (doc. 23) to the extent that it DISMISSES Defendants Hamilton County Board of Commissioners, Hamilton County, and Hamilton County Sheriff Leis from this action, and DISMISSES Plaintiff's malpractice claim.  The Court further GRANTS Plaintiff's Motion for Class Certification (doc. 12).


SO ORDERED.



Dated: August 23, 2005          /s/ S. Arthur Spiegel

                                S. Arthur Spiegel
                                United States Senior District Judge