UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL POWERS,                    :
                                   :    NO. 1:02-CV-00605
         Plaintiff,                :
                                   :
                                   :    **OPINION AND ORDER**
   v.                              :
                                   :
                                   :
HAMILTON COUNTY PUBLIC             :
DEFENDER COMMISSION,               :
   et al.,                         :
                                   :
         Defendants.               :


         This matter is before the Court on Plaintiff's Individual
and Class Motion for Partial Summary Judgment on Liability (doc.
36), Defendants' Response (doc. 42), and Plaintiff's Reply (doc.
44).  Also before the Court is Plaintiff's Individual and Class
Motion for Partial Summary Judgment on Damages (doc. 39),
Defendants' Response (doc. 42), and Plaintiff's Reply (doc. 49).

**I.  Background**

         This matter involves Plaintiff's allegations that in
violation of constitutional and statutory rights, Defendants
systematically failed to provide him and class members with
representation on the issue of their ability to pay fines and/or
costs assessed by Hamilton County Municipal Court, resulting in
their incarceration despite their inability to pay those

fines/costs (doc. 1).[1]   On August 25, 2005, the Court certified Plaintiff's proposed class to include:

> All persons who, without an indigency hearing, have been incarcerated in a Hamilton County correctional facility from August 21, 2000 to present, as a result of the nonpayment of a fine and or costs, including persons who violated probation following a "stay to pay sentence."

(doc. 36).   In the same Order, the Court rejected Defendants Hamilton County Public Defender (hereinafter,"Public Defender") and the Hamilton County Public Defender Commission's (hereinafter, "Commission") motion for summary judgment challenging Plaintiff's Section 1983 claims (Id.).   The Court concluded that "the administration of an unconstitutional policy by a public defender agency can be actionable under Section 1983" (Id.).   Plaintiff brings his current motions for summary judgment arguing that the Court's rejection of Defendants' motion clearly establishes liability in his favor and in favor of the class (doc. 36). Accordingly, Plaintiff requests the Court to enter an Order in favor of the class, and at the statutory amount fixed in Ohio's wrongful imprisonment statute, $118.71 per day (doc. 39, citing Ohio Rev. Code § 2743.48(E)(2)(b)).

Defendants argue in response that taking all inferences in favor of the nonmoving party, summary judgment against them is inappropriate (doc. 42).   Defendants attempt to reframe the case so

---

[1] The Court incorporates by reference the factual background and procedural history of its August 25, 2005 Order (doc. 34).

as to focus on the actions of individual attorneys representing clients, rather than on the established general practice of failure to request indigency hearings (Id.).  In so doing, Defendants reiterate and reincorporate the same arguments they raised in support of their motion for summary judgment (Id.).  Defendants further argue that if this matter is solely about procedure and not about Plaintiff's underlying sentence, then his claim is frivolous and ought to be dismissed, as "there is no liberty interest in process itself" (Id.).  As for Plaintiff's claim for damages, Defendants argue that Ohio's waiver of immunity for damages for wrongful imprisonment does not apply to misdemeanor offenders, and Ohio's Court of Claims has exclusive original jurisdiction over such claims (Id. citing Ohio Rev. Code § 2743.48(A) and § 2743.48(D)).

Plaintiff replies that the Court decided several of the issues raised by Defendants in its prior Order, that inferences in favor of Defendants cannot preclude judgment in favor of Plaintiff, and that the Public Defender cannot claim he has no control over his employees or the litigation policy they pursue (doc. 44).  The bottom line according to Plaintiff is that the Constitution and Ohio law forbid the incarceration of a citizen for a debt unless he or she has been granted a hearing to establish whether he or she could pay or was in fact indigent (Id.).  Accordingly, Plaintiff argues, every citizen has a liberty interest in not being

incarcerated for debt without a hearing (Id.).

## II. PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

### A. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir.1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of

-4-

informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).   The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere

existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir.1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir.1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc.,

369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

**B. Discussion**

### 1.  Plaintiff's Motions (docs. 36 & 39)

Plaintiff argues that he has satisfied the elements of a Section 1983 claim, which is comprised of proof of (1) deprivation of a right secured by the Constitution or laws of the United States, and (2) deprivation caused by a person while acting under color of state law (doc. 36, citing Christy v. Randlett, 932 F.2d 502, 504 (6th Cir. 1991)).  Additionally, under Garner v. Memphis Police Dept., 8 F.3d 358, 364 (6th Cir. 1994), when the claim is based on a policy, plaintiff must identify the policy, connect the policy to the defendant, and show that his injury resulted because of execution of the policy (Id.).  Plaintiff argues these elements are satisfied because the right not to be incarcerated for debt is a federal right which may be redressed by a Section 1983 action,

and persons accused of probation violations possess a federal right to counsel to preserve that right (Id. citing Bearden v. Georgia, 461 U.S. 660 (1983), Alkire v. Irving, 330 F.3d 802, 816 (6th Cir. 2003)).  Plaintiff argues the Court has already found that Defendants had a well-settled policy of not asking for an indigency hearing before a defendant is incarcerated for failure to pay a fine, and the causal connection between Defendants' conduct and Plaintiff's time in jail is too clear to require a trial (Id.). Finally, Plaintiff argues there is no difference between him and the class for purposes of summary judgment, and he cites to the transcripts filed with the court showing a number of defendants committed on fines with no request for an indigency hearing made (Id.).

Plaintiff's parallel motion on damages argues that his discovery requests should produce sufficient information as to how many days each class member was imprisoned on fines (doc. 39). Plaintiff argues that the amount of liquidated damages in Ohio's wrongful imprisonment statute, Ohio Rev. Code § 2743.48(E)(2)(b), which is $118.71 per day, should be a fair amount for the Court to award to each class member per day of imprisonment (Id.).

### 2.  Defendants' Response (doc. 42)

Defendants' Consolidated Response to Plaintiff's Motion first recounts the organization and duties of the Hamilton County Public Defender Commission and the County Public Defender (doc.

-8-

42).  Defendants argue the Commission's responsibilities do not include day-to-day supervision of the office of the Public Defender, that management decisions are made by the Public Defender, and the Commission plays no role in employment decisions regarding attorneys working for the Public Defender (Id.).  Under statute, explain Defendants, the Commission's responsibilities include the appointment of the county public defender and a recommendation to the County Commissioners for the annual operating budget (Id.).  The members of the Commission are volunteers who serve without pay and the Commission has no operating revenue, no budget, and incurs no expenses (Id.).

Defendants next explain that all attorneys hired by the Public Defender are licensed in the State of Ohio (Id.). Defendants indicate that its staff and contract attorneys are not directed or controlled by the Public Defender with respect to tactical decisions made in the representation of individual clients (Id.).  Defendants proffer numerous attorney affidavits outlining the responsibilities of staff attorneys employed by the Public Defender, and stating that when a fine is a component of a sentence, there are numerous considerations made (Id.). Defendants argue the sentencing transcripts provided by Plaintiff include two defendants not represented by the Public Defender, one defendant who was given credit for time served to cover the fine imposed, and four others, the indigency status of whom was reported to the court

(<u>Id</u>.).

Defendants reiterate their argument that Plaintiff is questioning the validity of his sentence, which cannot be done under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994) (doc. 42). Defendants further repeat their argument that Plaintiff's claim relates entirely to the representation he received by an individual attorney, and no Section 1983 action can stand in such an instance under <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981)(<u>Id</u>.). Defendants state this case boils down to the simple proposition of whether <u>Heck</u> and <u>Polk</u> are still controlling law in this circuit, or not (<u>Id</u>.). Defendants next argue that all reasonable inferences must be made in their favor, such that it is "irrelevant" whether Plaintiff has satisfied all the elements of a Section 1983 claim (<u>Id</u>.). Defendants argue that the Public Defender does not control the decisions made by assigned counsel, so there is no policy and no liability attaches to the Public Defender (<u>Id</u>.). As for the Public Defender Commission, Defendants argue its limited role focuses on staffing and budgetary needs and it has no role in the managerial decisions of the Public Defender (<u>Id</u>.).

Defendants argue "there is no liberty interest in process itself," citing to <u>Levin v. Childers</u>, 101 F.3d 44, 46 (6th Cir. 1996)(<u>Id</u>.). Under Defendants' theory, Ohio Revised Code 2947.14 only requires a hearing but guarantees no substantive outcome, and further puts the burden on only the Court to conduct an indigency

inquiry (Id.).  In Defendants' view, therefore, Plaintiff's claim fails under Childers.

Defendants further argue they have no money to pay any judgment if they incur liability (Id.).  They argue the Commission has no budget, and the Public Defender is funded by the state of Ohio and by Hamilton County (Id.).  As such, Defendants reason that any payment of damages actually comes from Hamilton County, and through it the state, a result implicating the Eleventh Amendment and barred by Monell v. New York City Dep't. of Social Services, 436 U.S. 658, 691 (1978)(Id.).

Next Defendants argue that Plaintiff's claim calls into question every criminal sentence in which a fine was imposed (Id.). Defendants state that principles of federalism and comity preclude the "wholesale re-examination" of state court judgments (Id. citing Younger v. Harris, 401 U.S. 37, 44 (1971) and Catz v. Chalker, 142 F.3d 279, 293 (6th Cir. 1998)(explaining the Rooker-Feldman doctrine barring federal court review of state court judgments)).  Finally, Defendants argue that Plaintiffs are incorrect to use Ohio's wrongful imprisonment statute as a yardstick for damages in this case, because Ohio Rev. Code 2743.48(A) does not apply to misdemeanor offenders (Id.).  Moreover, Defendants argue the Ohio Court of Claims has exclusive original jurisdiction over such claims (Id.).

### 3.  Plaintiff's Replies (docs. 44 & 49)

Plaintiff replies that most of the issues raised by Defendants were already decided by the Court in its August 25, 2005 Order (doc. 44).  Plaintiff attacks Defendants' claim that the Public Defender reported his indigency status to the Court, and cites the transcript which shows the following:

> The Court: Does he want me to sentence him today?
>
> Public Defender Attorney Shafer: He does, yes.  Mr. Powers is homeless and can't come up with any bond, so he would like to get this over with.
>
> * * *
>
> The Prosecutor: Michael Powers violated his probation by failing. . .to pay fines, court costs and probation fees.
>
> The Court: Anything on those facts, Sir?
>
> Public Defender Attorney Shafer: Nothing, Judge.
>
> The Court: Guilty finding.

According to Plaintiff the transcript speaks for itself, in that Plaintiff's public defender made no request for an inquiry into his indigency status, and no argument that any detention on fines would be unconstitutional under Bearden v. Georgia, 461 U.S. 660 (1983)(Id.).

Plaintiff attacks Defendants' argument that Rule 56 inferences somehow change the result in this case (Id.).  Plaintiff argues that though such inferences should be made in favor of the non-moving party, Defendants have failed to show what specific

-12-

inferences should be made in their favor (Id.).  Plaintiff further
argues that the Public Defender cannot escape liability by claiming
he has no control over his employees or over the litigation they
pursue (Id.).  Plaintiff argues Defendants have failed to offer
proof that they comply with the requirement that no person be
incarcerated for a debt unless he or she has been afforded a
hearing to determine whether he or she could pay or was in fact
indigent (Id.).  Plaintiff argues should Defendants have a policy
that complies with Constitutional requirements, they could have
presented sworn testimony demonstrating they do request indigency
hearings, but are routinely turned down by judges (Id.).  Plaintiff
states that none of the evidence proffered by Defendants even
addresses the issue in this case, "unconstitutional incarceration
for debt and why public defender attorneys do nothing about it"
(Id.).  The only inference to be made based on Defendants' sworn
materials, Plaintiff argues, is based on their silence: Defendants
systematically and at every level permit indigent Defendants to be
incarcerated for debt without the least attempt to obtain a hearing
as required by law (Id.).

    Plaintiff next argues that the lack of a budget does not
immunize county officials or entities from liability for
unconstitutional policies (Id.).  Plaintiff distinguishes Levin v.
Childers, 101 F.3d 44 (6th Cir. 1996), cited by Defendants for the
proposition that "an expectation of receiving process is not,

without more, a liberty interest protected by the Due Process Clause" (<u>Id</u>.). According to Plaintiff, the defendant in <u>Levin</u> had not yet been punished, and therefore the deprivation of a hearing in his case did not amount to a violation of <u>Bearden</u> (<u>Id</u>.). In the case at hand, argues Plaintiff, he was incarcerated--lost his liberty-- after the denial of process, so there is clearly a liberty interest at stake (<u>Id</u>.).

Plaintiff argues Defendants offer no authority for the proposition that a state actor may escape liability for violating another's constitutional rights by demonstrating another state entity will have to pay the judgment (<u>Id</u>.). Plaintiff further argues that the Court's prior decision should stand that <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978) does not remove Defendants from this case (<u>Id</u>.). Similarly, Plaintiff argues the Court has already rejected the application of the <u>Rooker-Feldman</u> doctrine and <u>Younger</u> abstention to this case (<u>Id</u>.).

Finally, in Plaintiff's Reply in support of his motion for summary judgment on damages, he argues that Defendant misperceives his citation to the Ohio wrongful imprisonment statute (doc. 49). Plaintiff states he is simply looking for an appropriate guideline for what a day in jail is worth, and is not looking to file a claim pursuant to Ohio Rev. Code § 2743.48 (<u>Id</u>.). Plaintiff argues Defendants have not given any grounds for paying

less than $118.71 per night, so the Court should approve such amount.

## III.  ANALYSIS

Having reviewed this matter, the Court must again reject Defendants' argument that this case is about individual representation offered to indigents, thus taking it out of the scope of Section 1983.  Plaintiff has alleged that Defendants have administered an unconstitutional policy under which indigent defendants were incarcerated due to unpaid fines.  Although Defendants offer copious amounts of information about their respective roles, they have not raised a genuine dispute of material fact as to the existence of such a policy.  City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  Defendants' attempt to frame the case as one in which individual attorneys are making tactical decisions falls flat, when the record before the Court shows that defendants systematically were incarcerated on fines with no request for an inquiry into their ability to pay. There is no tactical value in failing to uphold fundamental constitutional rights.

The Commission attempts to delineate its role as primarily budgetary, yet the statute setting it in place clearly envisions that it has a role to cooperate in maintaining standards for the training of legal staff for the Public Defender.  Ohio Revised Code 120.14(C)(3).  Moreover, all parties who contract with

the Commission must mandatorily "[c]omply with all statutory duties and other laws applicable to county public defenders." Ohio Revised Code 120.14(F)(3). The Commission, therefore, has more of a role to play than merely setting budgets. Its role includes setting general operational policy so as to ensure the provision of representation to indigent defendants. In all of its contracting, and its standard bearing, it has an obligation to uphold the rights of indigent defendants.

The Public Defender plays an even more obvious role. The law requires that the Public Defender provide legal representation to indigent defendants who are charged with a violation that could result in a loss of liberty. Ohio Rev. Code 120.16(A)(1). Clearly this fundamental mission is not met where there is a systematic failure to protect the liberty of defendants who face incarceration on fines but have no means to pay them.[2]

Plaintiff's argument is well-taken that Defendants have failed to rebut his prima facie case. Defendants proffer no affidavit proof or otherwise showing they ever requested a hearing

_____

[2] The Court noted in its earlier Order, and reiterates again that Judge Timothy Hogan, who chaired the Standing Criminal Committee in 1982, issued a memorandum instructing the court administrator to "draft a procedure to eliminate the problem" of incarcerating indigents (doc. 34). However, the problem was not eliminated and ultimately has persisted for decades. The Public Defender has offered no evidence showing how his office ever challenged the practice. The trial transcripts of Plaintiff, Ballew, Nevling, and Scruggs show attorneys working for the Public Defender acceded to the practice.

-16-

on indigency so as to prevent unlawful incarceration.  Defendants argue correctly that as nonmoving party inferences must be made in their favor, but they completely fail to indicate to the Court what inferences should be made in their favor.

The Court also does not find well-taken Defendants' position that this case calls into question the validity of state court criminal sentences, in contravention of Heck v. Humphrey, 512 U.S. 477 (1994)(Id.).  As the Court explained in its prior Order, Heck has no application to this case (doc. 34, citing Spencer v. Kemna, 523 U.S. 1,17 (1998), and Dotson v. Wilkinson, 329 F.3d 463 (6th Cir. 2003).  Assuming every single class member defendant was in fact guilty and properly sentenced to pay a fine, other alternatives to "stay to pay" exist under which a state may constitutionally collect its fines from indigents.  Tate v. Short, 401 U.S. 395, 400 n.5 (1971), Williams v. Illinois, 399 U.S. 235 (1970).   Plaintiffs in this case raise no challenge to the validity of the sentence, but rather to the lack of inquiry into the indigency of defendants, which could have prevented unconstitutional incarceration.[3]

The Court squarely rejects Defendants' interpretation of

---

[3] Defendants are incorrect in their statement that this case boils down to the simple proposition of whether Heck and Polk are still controlling law in this circuit, or not.  The Court found them inapplicable.  This case is rather about whether Bearden, 461 U.S. 660 (1983), is still controlling law in this circuit, and it definitely is.

Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996), for the proposition that "there is no liberty interest in process itself." Plaintiff is correct that Levin is not on point. Clearly there is a "liberty interest" at stake when one is jailed for inability to pay a fine.

It strikes the Court as ironic in this case pertaining to indigency that Defendants raise as a defense to liability the argument that if the Commission is held liable, the Commission would be unable to pay the judgment. Plaintiff's position that Defendants offer no authority for such proposition is well-taken. Defendants further allude to Eleventh Amendment implications but fail to spell out how either Defendant is an alter ego of the state of Ohio. Although both Defendants are creatures of Ohio statute, and receive significant funding from the state, the Commission, which oversees the Public Defender, reports to the Hamilton County Commissioners. Ohio Rev. Code § 120.14. It appears to the Court that both Defendants are county agencies, which do not partake in the state's Eleventh Amendment immunity. Mount Healthy City School District Board of Education v. Doyle, 429 U.S. 274 (1977).

Defendants' remaining arguments, as pointed out by Plaintiff, are resurrected from earlier motions. Defendants' argument that Monell shields them from liability fails, as the Court has already found they had a policy under which indigent violators were jailed due to unpaid fines. City of St. Louis v.

Praprotinik, 485 U.S. 112, 127 (1988).  The Court also already found the Rooker-Feldman doctrine had no bearing on this case because the Court is not reviewing the state court judicial decision, but is rather reviewing a custom and policy of the Defendants of failing to request indigency hearings (doc. 34). Likewise, the Court found  that Younger abstention is inapplicable because this case is not about a claim that the underlying sentence has been or should be invalidated (Id.).

Having reviewed this matter, the Court is satisfied that Plaintiff has raised a prima facie Section 1983 case challenging Defendants' unconstitutional policy of failing to request indigency hearings to determine whether defendants had the ability to pay fines levied against them.  Defendants have failed to raise a genuine issue of material fact as to the existence of such a policy, and the Court rejects their various arguments attempting to avoid liability or place responsibility elsewhere.  There is no question in the Court's view that indigent defendants represented by the Hamilton County Public Defender were jailed on fines that they were unable to pay.  Defendants have a statutory and constitutional duty to provide effective representation to protect the rights of class members.  The practice in Hamilton County of jailing on fines without an indigency inquiry appears to have become so endemic that the entire system considered it normal.  As the Defendants failed to address the issue, Plaintiff was entirely

correct to do so.   The Court thus grants summary judgment to Plaintiff class on the question of liability.

The remaining issue is that of damages.   The parties quarrel about an appropriate amount of money to be given to class members, but jump over an intermediary step.   It appears to the Court that the previously-approved class definition broadly includes "All persons who, without an indigency hearing, have been incarcerated..." and such definition could include those who were able to pay their fines, but simply refused to.   "If the probationer has willfully refused to pay the fine or restitution when he has the means to pay, the State is perfectly justified in using imprisonment as a sanction to enforce collection." <u>Bearden</u>, 461 U.S. at 668.   Because in this case no inquiry was made into the reasons why class members were not paying fines, that question remains open.   Under <u>Bearden</u>, it appears that those defendants simply refusing to pay were justly incarcerated as they were not genuinely indigent.[4]   Such defendants clearly do not merit

_____

[4] Clearly the Public Defender by definition serves clients who are indigent. Ohio Rev. Code 120.16(A)(1). However, Ohio Rev. Code 120.03(B)(1) defines indigency in terms of inability to pay an attorney and all other necessary expenses of representation. It is not necessarily true that all those who cannot afford representation and thus need a court-appointed attorney cannot likewise afford to pay a small fine.   Plaintiff argued earlier in opposition to Defendants' motion for summary judgment that where over 600 persons were jailed on fines less than $100.00, it may be fairly presumed that such persons were indigent and unable to pay the fine.   The Court finds it more likely than not that this unrebutted presumption is correct.   However, if a defendant qualified for court-appointed representation but had adequate

compensation for their time in jail.  The Court finds the best way to remedy this issue is to modify the class definition to include only those persons who were in fact indigent.  The Court exercises its authority to modify sua sponte the class definition accordingly.  Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1213-14 (6th Cir. 1997), Council of and for the Blind of Delaware County Valley, Inc. v. Regan, 709 F.2d 1521, 1543 n.44 (D.C. Cir. 1983)(en banc)(Spottswood, J., concurring in part, dissenting in part)(noting that "[f]ederal courts possess ample authority to redefine the class to bring it within acceptable limits.").  Thus the Court modifies the class definition accordingly:

> All persons who were in fact indigent, who, without an indigency hearing, have been incarcerated in a Hamilton County correctional facility from August 21, 2000 to present, as a result of the nonpayment of a fine and or costs, including persons who violated probation following a "stay to pay sentence."

Having modified the class definition to include only those whose rights were in fact violated, the Court now may address the remedy to which class members are entitled.  Plaintiff argues that as the Ohio legislature has valued a night of wrongful incarceration at $118.71 per night this is a reasonable figure to award class members.  The Court finds well-taken Plaintiff's position that Defendants have not provided any grounds for paying less than $118.71 per night, and rejects Defendants' theory that

---

funds to pay a small fine and refused to do so, such defendant is not "genuinely" indigent for purposes of this case.

Plaintiff may not reference Ohio Rev. Code § 2743.48 as a guide in making such a determination. However, Plaintiff's method of computing damages may be but one way to arrive at a proper figure. The Court finds it appropriate, therefore, to stay a ruling on Plaintiff's damages motion until it has conducted a hearing on the matter. At the same hearing, the Court would request the parties offer their views as to the implementation of judgment in this matter, that is, the parties' views on how to make a determination of who genuinely belongs within the class.

## IV. CONCLUSION

For the reasons indicated herein, the Court finds Plaintiff's Motions for Summary Judgment well-taken. Accordingly, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment on Liability (doc. 36), to the extent that it finds relief appropriate for those who fall within the modified class definition. The Court however STAYS consideration of Plaintiff's Motion for Summary Judgment on Damages (doc. 39) pending a hearing, which it sets at 10:00 A.M. on March 15, 2006. At such hearing the Court further requests the parties to advise the Court as to the implementation of this Order.

SO ORDERED.


Dated: February 7, 2006        /s/ S. Arthur Spiegel
                               _____
                               S. Arthur Spiegel
                               United States Senior District Judge

-22-